**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

| | | |
|---|---|---|
| **CHARLES L. MOORE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 5:05-0453** |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**M E M O R A N D U M   O P I N I O N**

This is an action seeking review of the decision of the Commissioner of Social Security

denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-

1383f. This case is presently pending before the Court on Plaintiff's Motion for Summary Judgment

(Doc. No. 14.) and Defendant's Motion for Judgment on the Pleadings. (Doc. No. 17.) Both parties

have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Charles L. Moore (hereinafter referred to as "Claimant"), filed applications for

DIB and SSI on January 21, 2004, (protective filing date), respectively, alleging disability as of

November 15, 2003, due to a pinched sciatic nerve and two herniated lumbar discs. (Tr. at 53, 54-56,

67, 303-06 .) The claim was denied initially and upon reconsideration. (Tr. at 34-40, 43-45, 307-16.)

On September 9, 2004, Claimant requested a hearing before an Administrative Law Judge (ALJ).

(Tr. at 46.) The hearing was held on December 8, 2004, before the Honorable John T. Yeary. (Tr.

at 320-58.) By decision dated April 14, 2005, the ALJ determined that Claimant was not entitled to

benefits. (Tr. at 1-48-20.) The ALJ's decision became the final decision of the Commissioner on

May 18, 2005, when the Appeals Council denied Claimant's request for review. (Tr. at 4-8.) On June 2, 2005, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2002). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a).[1] First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we

---

[1] As noted above, these Regulations were substantially revised effective September 20, 2000. *See* 65 Federal Register 50746, 50774 (August 21, 2000).

consider when we rate the degree of your functional limitation.

(3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[2] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder

---

[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation , each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15.) Under the second inquiry, the ALJ found that Claimant had a herniated lumbar disc and obesity, which were severe impairments. (Tr. at 17.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17.) The ALJ then found that Claimant had a residual functional capacity for light work with the following limitations:

> [H]e can never kneel, crawl, crouch, and climb ropes, ladders, and scaffolds; he can occasionally climb ramps and stairs, balance, and stoop; he should avoid concentrated exposure to extreme cold, vibration and hazards; he experiences mild to moderate pain but could be attentive to and carry out assigned work tasks.

(Tr. at 18.) The ALJ concluded, in view of Claimant's residual functional capacity and based upon the testimony of Vocational Expert ("VE"), Casey Vass, that Claimant could return to his past

relevant work as a telemarketer. (Tr. at 19-20.) On this basis, benefits were denied. (Tr. at 19-20.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on June 27, 1976, and was 28 years old at the time of the administrative hearing. (Tr. at 15, 54, 327.) Claimant had a high school education and was attending college. (Tr. at 15, 73, 328-30.) In the past, he worked as a telemarketer, certified nursing assistant, grill cook, and a laborer at a newspaper office and in handling bulk mail. (Tr. at 15, 354.)

6

 The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence, and will discuss it below in relation to Claimant's arguments.

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ (1) failed to give great weight to the opinions of Claimant's treating physician, Paul Oar, M.D., and (2) erred in assessing Claimant's pain and credibility. The Commissioner asserts that these arguments are without merit and that substantial evidence supports the ALJ's decision.

1. Treating Physician Opinion.

Claimant first alleges that the ALJ failed to give proper weight to the opinions and residual functional capacity assessment of Dr. Oar, Claimant's treating physician. (Pl.'s Br. at 17-20.) The Commissioner asserts that this argument is without merit. (Def.'s Br. at 10-11.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2004). Ultimately, it is the responsibility of the Commissioner, not the Court to review the case, make findings of fact, and

resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2) - (6). These factors include: (1) Length of the treatment relationship and frequency of evaluation, (2) Nature and extent of the treatment relationship, (3) Supportability, (4) Consistency, (5) Specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2), 416.927(d)(2) (2004).

Under §§ 404.1527(d)(1), 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527 and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more  weight  will be given),  consistency (the more consistent an opinion is with the

8

evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

The RFC determination is an issue reserved to the Commissioner. <u>See</u> 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)(2004).

> In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and nonmedical evidence, such as a claimant's own statement of what he or she is able or unable to do. That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict.

<u>Diaz v. Chater</u>, 55 F.3d 300, 306 (7th Cir. 1995) (citations omitted). Although medical source opinions are considered in evaluating an individual's residual functional capacity, the final responsibility for determining a claimant's RFC is reserved to the Commissioner. <u>See</u> 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2) (2004). In determining disability, the ALJ must consider the medical source opinions "together with the rest of the relevant evidence we receive." <u>Id.</u> §§ 404.1527(b), 416.927(b).

Claimant argues that the ALJ should have accorded great weight to the opinions of his treating physician, Dr. Oar. The record indicates that Claimant sought treatment from Dr. Oar from May 17, 2000, through November 9, 2004. (Tr. at 167-238, 270-89.) On October 21, 2002, Dr. Oar examined Claimant upon complaints of back pain, which radiated to his foot and caused him to walk with a limp. (Tr. at 185.) Dr. Oar noted that the pain was a flare up of an injury incurred while working at a nursing home. (<u>Id.</u>) Although Claimant had no tenderness, Dr. Oar noted that his gait was antalgic and that he could not forward bend. (<u>Id.</u>) Dr. Oar opined that he had right side sciatica and prescribed him Ibuprofen, 800 mg. (<u>Id.</u>) Claimant presented again with low back pain on May 1, 2003, and stated that the pain radiated down his right leg, and at times, to his foot. (Tr. at 180.)

Claimant indicated that he had experienced back pain on and off for years, but that the pain had worsened within the past two weeks. (Id.) Dr. Oar diagnosed Claimant with sciatica of the right leg and prescribed Ibuprofen and no work for one week. (Id.) On May 8, 2003, Claimant complained of low back pain radiating to his hips. (Tr. at 179.) On exam, Dr. Oar noted that Claimant walked with an antalgic gait and had a positive straight leg raise on the right of 30 degrees. (Id.) Dr. Oar instructed Claimant to not work the following day. (Id.) On May 19, 2003, Claimant complained of back pain when sitting or standing and indicated that the pain radiated down his right leg. (Tr. at 178.) Dr. Oar noted a limited range of motion of his back, a straight leg raise on the right of 30 degrees, and a straight leg raise on the left of 50 degrees. (Id.) Claimant was given samples of Vioxx to take for his condition. (Id.) On August 4, 2003, Claimant's complaints of pain persisted. (Tr. at 177.)

On November 18, 2003, an MRI scan revealed that Claimant had a disc herniation at L4-5, resulting in spinal stenosis and probable nerve root impingement. (Tr. at 123.) Despite the diagnosis of Claimant's back condition, Dr. Oar released Claimant to return to work on November 27, 2003. (Tr. at 204.) On December 4, 2003, however, Claimant continued to complain of back pain and pain in his left leg with numbness. (Tr. at 174.) Dr. Oar referred Claimant to Dr. Adnan N. Silk, M.D., who performed a neurosurgical evaluation of Claimant on December 31, 2003. (Tr. at 135, 176.)

On examination, Dr. Silk noted Claimant's complaints of low back pain and intermittent pain radiating to his lower extremities, which had recently increased in severity and intensity. (Tr. at 135.)  Dr. Silk reported that Claimant's forward bending and bilateral straight leg raise measured 70 degrees and was accompanied with back and hip pain. (Id.) He observed that Claimant had no motor weakness or sensory changes in his lower extremities, had good flexion and extension of both

legs, had strong and symmetrical dorsi and plantar flexion, and was able to walk without any difficulty. (Tr. at 135-36.) Dr. Silk diagnosed lumbar spondylosis and stenosis at L4-5, and recommended physical therapy and weight reduction. (Tr. at 136.) In a follow-up examination conducted on February 11, 2004, Dr. Silk noted that Claimant continued to experience severe pain in his back and legs and that the physical therapy yielded little improvement. (Tr. at 134.) On exam, Claimant presented with some tenderness in the mid-lumbar area. (Id.) His forward bending and straight leg raise measurements remained the same. (Id.) Dr. Silk recommended that Claimant undergo conservative treatment with possible epidural injections. (Tr. at 133-34.) He did not find that Claimant was a candidate for surgical intervention. (Id.)

Claimant was examined by Dr. Oar on January 24, 2004, for continued complaints of severe low back pain which radiated down both legs. (Tr. at 173.) On exam, Dr. Oar noted that Claimant had an antalgic gait and a restricted range of motion of his lower back due to a disc herniation and spinal stenosis. (Id.) In a letter to Diane Berra dated that same date, Dr. Oar reported that Claimant suffered from severe low back pain which radiates down both legs, disc herniation, probable nerve root impingement, and spinal stenosis. (Tr. at 203-04.) He advised that his physical therapy sessions did not help and that he was unable to sit or stand for prolonged periods of time. (Id.) Specifically, Dr. Oar stated: "The nerve root impingement is worsened and the pain increases. Sitting is the worst position." (Id.) On February 16, 2004, Dr. Oar noted that Claimant's gait was antalgic, that he used a cane, and that he had a restricted range of motion of the lower back. (Tr. at 172.) Dr. Oar opined that due to his herniated disc, he should do no lifting or stand or sit for prolonged periods of time. (Id.) He further opined that Claimant was "totally disabled form work." (Id.) In a letter to Unum Provident dated April 16, 2004, Dr. Oar opined that because of his medical condition, "he is unable

to return to work." (Tr. at 203.) In an unaddressed letter dated June 24, 2004, Dr. Oar stated: "This letter is to confirm that my patient, Mr. Charles Moore, is disabled. He is unable to work due to serious medical problems." (Tr. at 167.) Treatment notes indicate that this letter was prepared to facilitate approval of Claimant's request for food stamps. (Tr. at 168.)

In a Physical Medical Assessment to do Work-Related Activities completed on January 19, 2005, Dr. Oar opined that Claimant was limited to lifting/carrying ten pounds; walking for a total of thirty minutes, fifteen minutes at a time; and sitting for thirty minutes without interruption, with repositioning every few minutes. (Tr. at 300-02.) He further opined that Claimant must never climb, balance, stoop, crouch, kneel, or crawl, and must avoid heights, moving machinery, and cold temperature extremes. (Tr. at 301-02.) Dr. Oar also indicated that Claimant's ability to push and pull was limited due to pain in his back. (Tr. at 301.)

The ALJ noted Dr. Oar's opinions, but afforded them "no weight" because the opinions were not supported by objective medical findings, were inconsistent with other evidence of record, and contained no medical facts or diagnoses. (Tr. at 18-19.) Rather, the ALJ found that Dr. Oar's June 24, 2004, letter was apparently written "to help his patient" obtain food stamps. (Id.) The ALJ also noted that after the initial diagnosis, Dr. Oar released Claimant to return to his past work. (Tr. at 19.)

Other medical evidence of record indicates that Rodolfo Gobunsuy, M.D., conducted a consultative exam of Claimant on December 21, 2004. (Tr. at 290-99.) Claimant explained his condition and noted that it was worse with bending, lifting, prolonged sitting, riding, or standing, and was better with his medication and when changing positions or lying down. (Tr. at 390.) On exam, Dr. Gobunsuy noted that Claimant had occasional shortness of breath; that he was

12

comfortable in the sitting and supine positions; that his gait was antalgic, favoring his right leg with the use of a cane; and that he walked steadily but had difficulty rising from the supine position. (Id.) Dr. Gobunsuy found no muscle weakness or atrophy, noted that his sensory modalities were preserved, that he could walk on his heels and toes but could not heel-to-toe in tandem, that he could not squat, and that he could stand on one leg at a time. (Id.) Claimant presented with tenderness of his lumbar spine at L4-S1 but had no paralumbar muscle spasm. (Id.) Dr. Gobunsuy noted that the range of motion of his lower back was affected. (Id.) Consequently, Dr. Gobunsuy reduced Claimant's RFC and opined that he was able to perform work at the light exertional level and could stand/walk at least two hours in an eight-hour workday and could sit without difficulty. (Tr. at 296-97.) He further opined that Claimant had limited use of his lower extremities for pushing and pulling, had occasional postural limitations, and could not work at heights or around hazardous machinery. (Tr. at 297-99.)

The ALJ included a summary of Dr. Oar's findings and opinions in his decision. (Tr. at 16-17, 18-19.) He also discussed the findings and opinions of Dr. Silk and Dr. Gobunsuy. (Tr. at 16, 19.) The ALJ determined that Claimant had a herniated lumbar disc and obesity which qualified as severe impairments. (Tr. at 17.) Giving great weight to Dr. Oar's opinion after Claimant's initial diagnosis that he could return to his past work and to Dr. Gobunsuy's opinions, the ALJ determined that Claimant had the residual functional capacity for sedentary work with postural and environmental restrictions. (Tr. at 18-19.) The ALJ acknowledged that Dr. Oar was Claimant's treating physician (Tr. at 19.), but found that other than decreased range of motion of his lower back and decreased straight leg raises, the evidence of record did not support Dr. Oar's finding of disability. (Tr. at 18-19.) The ALJ thus stated and took into account the factors listed in 20 C.F.R.

§§ 404.1527 and 416.927 in analyzing and weighing the medical source evidence. (Tr. at 16-19.) Despite Dr. Oar's opinions that Claimant's back condition resulted in marked limitations of activity with comfort only at rest, the substantial evidence of record indicated that her condition was not as severe as he indicated.

Based on the foregoing, the ALJ's determination to give little or no weight to the opinions of Dr. Oar is consistent with the applicable law and Regulations and is supported by substantial evidence. The undersigned finds based upon a thorough review of the record that the ALJ's analysis and weighing of the opinions of the medical sources is fully in conformity with applicable law and Regulations and supported by substantial evidence. Claimant's assertions to the contrary are without merit.

2. Pain and Credibility Assessment.

Claimant next alleges that the ALJ failed to evaluate the effect of his subjective complaints of pain on his "ability to work as set out in Hy[att] v. Heckler, 579 F.Supp. 985."[3] (Pl.'s Br. at 20.) He argues that he presented an impairment likely to cause pain and that the ALJ erred in not according great weight to his subjective complaints of pain. (Tr. at 21.) The Commissioner asserts that although the ALJ accepted Claimant's obesity and lumbar disc herniation as conditions likely

---

[3] In *Hyatt v. Heckler*, the Western District Court of North Carolina held that the ALJ must consider the disabling effects of pain experienced "notwithstanding the fact that such pain is not supported by objective clinical findings." *Hyatt v. Heckler*, 579 F.Supp. 985, 1000 (W.D.N.C. 1984). This opinion was ultimately vacated on other grounds by *Hyatt v. Sullivan*, 899 F.2d 329, 334 (4th Cir. 1990), but the District Court's holding remained constant:

> [The ALJ] should evaluate the effect of pain on the claimant's ability to work when the pain results from a medically diagnosed physical impairment even though the pain's intensity is shown only by subjective evidence.

This standard is consistent with the law set forth in the above analysis.

to cause pain, the ALJ nevertheless found that Claimant's statements were "not entirely credible." (Tr. at 11.) The Commissioner thus argues that the ALJ's analysis was in accordance with the applicable law and Regulations. (Id.)

A two-step process is used to determine whether a claimant is disabled by pain. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain alleged. 20 C.F.R. §§ 404.1529(b), 416.929(b) (2004); SSR 96-7p; see also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain and the extent to which it affects a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause pain, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (2004). Additionally, the regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>
> (I) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2004).

SSR 96-7p repeats the two-step regulatory provisions. See SSR 96-7p, 1996 WL 374186 (July 2, 1996). Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply

16

because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms and credibility. (Tr. at 17.) The ALJ acknowledged, with regard to the threshold test, that Claimant was obese, standing 5 feet and 10 inches tall and weighing 335 pounds, and had a lumbar disc herniation with stenosis as confirmed by MRI on November 18, 2003. (Tr. at 18, 327.) With respect to the second step, the ALJ considered the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected his ability to work. (Tr. at 18-19.) The ALJ noted the requisite factors, and then analyzed them in the opinion, concluding that the Claimant's complaints suggested a greater severity of impairment than could be shown by the objective medical evidence. (Tr. at 18-19.)

The ALJ noted Claimant's testimony that he experiences constant low back pain which radiates into his legs and which he described at a level eight on a pain scale of one to ten. (Tr. at 18, 340.) He further noted that Claimant testified that he can sit no longer than ten minutes, stand for five minutes, and can lift ten pounds maximum. (Tr. at 18, 348.) Claimant also testified that he uses a heating pad for the pain. (Tr. at 18, 339.) Despite his alleged limitations in sitting and standing, the ALJ found that the notes from Claimant's medical examinations made no mention of discomfort in the seated position. (Id.) The undersigned notes that Dr. Oar's progress notes indicate that Claimant complained of back pain when standing or sitting on May 19, 2003. (Tr. at 178.) On

December 4, 2003, Claimant reported to Dr. Oar that the pain is alleviated some when lying down. (Tr. at 174.) Dr. Oar, therefore, opined that Claimant should not sit or stand for prolonged periods of time. (Tr. at 167, 172, 203-04, 300-01.) Dr. Gobunsuy, however, observed that Claimant was comfortable in the sitting and supine positions, but had difficulty arising from the sitting position. (Tr. at 290.) As previously discussed, the ALJ gave no weight to the opinions of Dr. Oar.

The ALJ further noted that Claimant denied having any problems taking care of his personal needs, except for putting on his socks and shoes, and reported his activities as folding the laundry, cooking quick meals, and washing dishes. (Tr. at 18, 345-46.) Claimant also testified that he attends church every Sunday and recently attended a church event where he sat at a booth singing to children and helping them play games. (Tr. at 18, 343.) The ALJ noted that Claimant's written statements additionally indicate that he vacuums, takes out the garbage, cares for his children, and shops for food or clothing on a weekly basis. (Tr. at 18, 84-85.) The ALJ also noted that during a psychological evaluation Claimant reported that he fixes breakfast for his children on a daily basis and does laundry, attends choir practice, and visits with his father on a weekly basis. (Tr. at 18, 149.) Claimant also reported that he goes to the movies on a monthly basis. (Id.) The ALJ found that Claimant's activities, in conjunction with his conservative medical care and his release to return to work one year after the alleged onset date of disability, suggested that he was able to return to work despite the alleged pain. (Tr. at 18.)

Upon a careful review of the record, the undersigned finds that the ALJ's determination that Claimant's statements respecting his pain/symptoms were not totally credible is supported by substantial evidence. The ALJ's analysis of Claimant's pain and credibility was proper and in accordance with the applicable law and Regulations. The evidence of record indicates, as the ALJ found, that Claimant experiences mild to moderate pain and other symptoms as a consequence of

his impairments, but that Claimant's pain and other symptoms are not as debilitating as Claimant contends. (Tr. at 17-19.) The ALJ found that Claimant could perform sedentary work with additional limitations, and therefore took into account most of Claimant's symptoms. The ALJ's determination on Claimant's pain and credibility is supported by substantial evidence and Claimant's argument is without merit.

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is supported by substantial evidence.  Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is **DENIED**, Defendant's Motion for Judgment on the Pleadings is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Memorandum Opinion to counsel of record.

ENTER: August 30, 2006.

R. Clarke VanDervort
United States Magistrate Judge

19